## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDWARD PRATT,
    *Plaintiff,*

    v.

JACC HEALTHCARE CENTER OF
NORWICH LLC; et al.,
    *Defendants.*

No. 3:22-cv-566 (VAB)

## RULING AND ORDER ON MOTION TO REMAND AND MOTION TO DISMISS

Edward Pratt ("Plaintiff") has sued JACC Healthcare Center of Norwich, LLC; JACC

Healthcare Group, LLC; and JACC Management, LLC (collectively, "JACC" or "Defendants"),

asserting claims for negligence and medical malpractice. Mr. Pratt, a former resident at JACC's

Three Rivers Nursing Home ("Three Rivers"), alleges that he contracted coronavirus disease

2019, commonly referred to as COVID-19, and suffered related health problems as a result of

JACC's failure to implement adequate infection prevention policies. Compl. ¶¶ 4, 29, ECF No.

1-1.

After Mr. Pratt filed this lawsuit in Connecticut Superior Court, JACC removed to federal

court on the basis of federal question jurisdiction. *See* Notice of Removal at 4, ECF No. 1. Mr.

Pratt has filed a motion to remand the case to state court. Pl.'s Mot. to Remand, ECF No. 9.

Opposing the motion, JACC argues that Mr. Pratt's claims implicate the federal Public

Readiness and Emergency Preparedness Act ("PREP Act" or "the Act"), 42 U.S.C. §§ 247d-6d,

247d-6e, which, among other things, provides immunity from suit for claims "arising out of,

relating to, or resulting from" the use of COVID-related treatments and preventative measures.

Defs.' Opp'n to Mot. to Remand, ECF No. 12 ("Opp'n").

1

JACC also asks this Court to stay its consideration of the motion to remand pending the Second Circuit's decision in two appeals addressing similar issues. *Id.* at 3.[1] Separately, JACC has filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). Defs.' Mot. to Dismiss, ECF No. 10.

For the following reasons, Mr. Pratt's motion to remand is **GRANTED**, JACC's request for a stay is **DENIED**, and JACC's motion to dismiss is **DENIED as moot**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Three Rivers was a nursing home and rehabilitation facility owned and operated by JACC in Norwich, Connecticut. Compl. ¶¶ 1–3. From about January 24, 2020, to September 21, 2020, Mr. Pratt was allegedly an in-patient resident at Three Rivers, where he was being treated for diabetes and a left lower extremity amputation. *Id.* ¶ 4.

By January 2020, JACC was allegedly aware of the global spread of the SARS-CoV-2 virus, which causes COVID-19, and knew that COVID-19 poses a severe risk to patients like Mr. Pratt who have underlying medical conditions. *Id.* ¶¶ 5–7.

Over the following months, as COVID-19 spread throughout the United States, the Governor of Connecticut declared a public health emergency and issued executive orders aimed at preventing the spread of the disease, particularly in nursing homes. *Id.* ¶¶ 8–10, 14, 16. During this period, the Connecticut Department of Public Health allegedly began conducting COVID-19 monitoring visits at nursing homes to evaluate their infection prevention strategies. *Id.* ¶¶ 11–12, 22.

---

[1] Where a document's original page numbers differ from the ECF-generated page numbers, original page numbers are used.

According to Mr. Pratt, JACC failed to implement adequate safety procedures to limit or prevent the spread of COVID-19. He alleges that JACC violated Connecticut executive orders by failing to conduct weekly testing of staff members and failing to screen staff and visitors to ensure they were not returning from out-of-state travel before they completed the required quarantine period. *Id.* ¶¶ 15, 18. Mr. Pratt also alleges that JACC failed to require that staff wear masks, failed to segregate COVID-positive from COVID-negative residents, and failed to establish an infection prevention program as required by federal and state regulations. *Id.* ¶ 29.

As a result of these alleged failures, Mr. Pratt contracted COVID-19 in August 2020. *Id.* ¶ 24. He allegedly contracted pneumonia as well, and he suffered shortness of breath, weakness, and lung damages. *Id* ¶ 30. According to Mr. Pratt, his illness has required multiple hospitalizations, and his injuries are likely permanent. *Id.*

Separately, Mr. Pratt alleges that JACC failed to monitor his fluid intake or treat his dehydration after he was prescribed diuretic medications. *Id.* at 20–24, ¶¶ 6–21. As a result of these failures, Mr. Pratt suffered acute renal failure and permanent kidney damage. *Id.* at 23–25, ¶¶ 20, 22–23.

Three Rivers was allegedly closed by the Connecticut Department of Public Health in 2020. Compl. Ex. B, at 40.

### B.  The PREP Act

Enacted in 2005, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The Act's protections are triggered when the United States Secretary of Health and Human Services ("the Secretary") issues a declaration

identifying (1) a disease that constitutes a "public health emergency" and (2) covered countermeasures against that disease. *Id.* § 247d-6d(b).

In March 2020, the Secretary issued a declaration under the PREP Act "to provide liability immunity for activities related to medical countermeasures against COVID-19." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020). The declaration defined a broad range of covered countermeasures against COVID-19, including "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2." *Id.* at 15,202.

When the Secretary has issued a PREP Act declaration, "the sole exception to the immunity from suit and liability" created by the Act is "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). Thus, for any injuries "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual" of a COVID-related countermeasure, the only available cause of action is a federal claim for willful misconduct.

The PREP Act, however, does not extinguish all claims that are not based on willful misconduct. The Act separately establishes a Covered Countermeasure Process Fund ("the Fund"), overseen by the Secretary, to compensate individuals for "covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(a). The statutory scheme therefore ensures that covered persons who are merely negligent in the use of

covered countermeasures are immune from suit while enabling the individuals injured by such negligence to seek compensation through the Fund's administrative process.

### C.  Procedural History

On March 14, 2022, Mr. Pratt filed his Complaint in Connecticut Superior Court. Compl. He asserted claims for gross medical negligence (Count One) and negligence (Count Two) based on his COVID-related injuries and medical malpractice (Count Three) based on his dehydration-related injuries. *Id.*

On April 20, 2022, JACC removed the case to federal court. Notice of Removal.

On May 20, 2022, Mr. Pratt filed a motion to remand the case to state court on the ground that this Court lacks subject matter jurisdiction over the action. Mot. to Remand.

On May 31, 2022, JACC filed a motion to dismiss. Mot. to Dismiss.

On June 10, 2022, JACC filed an opposition to Mr. Pratt's motion to remand. Opp'n.

On July 1, 2022, Mr. Pratt filed an opposition to JACC's motion to dismiss. Opp'n to Mot. to Dismiss, ECF No. 15.

On July 15, 2022, JACC filed a reply in support of its motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 16.

On November 10, 2022, the Court held a hearing via Zoom on the pending motions. Min. Entry, ECF No. 26.

## II.   STANDARD OF REVIEW

### A.  Motion to Remand

A district court will remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). On a motion to remand, "the party asserting jurisdiction bears the burden of proving that the case is properly in federal

court." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). If the jurisdictional facts are challenged, "the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *Id.* at 305 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal quotation marks omitted).

### B.  Motion to Stay

The power to stay a lawsuit is inherent in a court's authority to manage its docket efficiently. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.") In deciding a request for such a stay, courts in the Second Circuit consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation, as balanced against the prejudice to the plaintiffs if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of persons not party to the civil litigation, and (5) the public interest." *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, No. 11 CIV. 4141 BSJ, 2012 WL 252139, at *5 (S.D.N.Y. Jan. 25, 2012) (citing *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). "[A] stay is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.'" *New York v. U.S. Dep't of Homeland*

*Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (second alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## III.   DISCUSSION

Mr. Pratt asserts claims under state law for (1) gross medical negligence; (2) negligence; and (3) medical malpractice. Compl. JACC argues that these state law causes of action are preempted by the PREP Act and seeks removal on this basis. Opp'n at 1.

"A civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (quoting 28 U.S.C. § 1441(b)). "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Because federal preemption is raised as a defense to state law claims, "it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.*; *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint . . . .").

There are, however, two situations in which state law claims can give rise to federal question jurisdiction. First, a state law claim "is 'really' one of federal law" when a federal cause of action "completely preempts" the state cause of action. *Franchise Tax Bd.*, 463 U.S. at 13, 24. Second, a state law claim arises under federal law when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Id.* at 13. JACC argues that both exceptions apply here. Opp'n at 4, 21.[2]

---

[2] JACC's notice of removal also asserts in a single sentence that "federal officer jurisdiction exists over the allegations in the Complaint because they relate to Defendants' actions taken at the direction of a Federal Officer."

The Court will address each of these issues in turn.

### A. The Complete Preemption Doctrine

A federal court may exercise subject matter jurisdiction when a claim, "even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8. This happens when a federal statute has "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action" such that the statute "wholly displaces the state-law cause of action." *Id.* Such a statute "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co.*, 481 U.S. at 63–64.

This basis for federal jurisdiction is known as the "complete preemption" doctrine, although courts have noted that the name is misleading "because its focus is not on preemption (a defense to a state-law claim) but on federal occupation of a field." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022); *see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 686 (9th Cir. 2022) ("Complete preemption is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace *any* state-law claim." (internal quotation marks omitted)).

In his motion to remand, Mr. Pratt does not address whether the PREP Act is a complete preemption statute. Instead, he argues that his claims do not fall within the scope of the PREP Act, and so there is no federal preemption to justify the exercise of this Court's jurisdiction. Mot.

---

Notice of Removal at 22. Because JACC does not mention federal officer removal in its opposition to Mr. Pratt's motion to remand, the Court will not address this purported basis for removal jurisdiction. *See also Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 405 (3d Cir. 2021) (concluding that the federal officer removal statute did not apply to private nursing homes subject to similar COVID-related claims); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (9th Cir. 2022) (same).

to Remand at 4–5. More specifically, Mr. Pratt argues that his COVID-related claims arise not from "the use . . . of a covered countermeasure" but from the failure to use such countermeasures. *Id.* at 3 (quoting 42 U.S.C. § 247d-6d(a)(1)). He also notes that his dehydration-related claims do not involve COVID-19 at all. *Id.* at 4.

JACC argues in response that the PREP Act is a complete preemption statute and that it applies to the COVID-related claims in this case. First, according to JACC, the PREP Act "broadly preempts all state law claims with *any* causal relationship to the administration or use of a covered countermeasure." Opp'n at 8. Second, JACC argues that the PREP Act's cause of action for willful misconduct is the only cause of action that can be maintained against a "covered person" when the PREP Act applies. *Id.* Thus, JACC contends, the PREP Act meets the standard set forth by the Supreme Court for identifying complete preemption statutes. *Id.*

JACC also urges the Court not to follow the approaches of the other Circuits to address this issue. Thus far, the Third, Fifth, Seventh, and Ninth Circuits have all concluded that the PREP Act is not a complete preemption statute and therefore does not support removal jurisdiction. *See Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022); *Martin*, 37 F.4th at 1213–14; *Saldana*, 27 F.4th at 687.

JACC contends that these courts erred in three ways.[3] First, according to JACC, they erroneously emphasized the distinction between the claim for "willful misconduct" authorized by the PREP Act and the negligence claims alleged by the plaintiffs in those cases. Opp'n at 10–11.

---

[3] *Martin* was decided by the Seventh Circuit after JACC filed its opposition, and neither party has filed a notice of supplemental authority. As a result, JACC's arguments address only the decisions of the Third, Fifth, and Ninth Circuits. The analysis in *Martin*, however, closely followed the reasoning of the decisions that preceded it. *See* 37 F.4th at 1215 ("Given the three existing appellate opinions, . . . an exhaustive treatment is not necessary. We have said enough to show why this suit was properly remanded.").

Second, and relatedly, JACC argues that these courts erred by relying on the fact that the plaintiffs didn't allege willful misconduct and therefore did not state a claim under the PREP Act. *Id.* at 11–12. Third, JACC contends that the out-of-circuit decisions incorrectly concluded that, because the PREP Act creates a narrow cause of action, it does not provide an "exclusive cause of action" that "wholly displaces" state negligence claims. *Id.* at 12–13.

The Court disagrees.

As other courts have noted, complete preemption is rare, and the Supreme Court has identified only three statutes—the Employee Retirement Income Security Act, the Labor Management Relations Act, and the National Bank Act—that so completely displace certain categories of state claims as to support federal question jurisdiction over such claims. *See Maglioli*, 16 F.4th at 408. Federal courts have been nearly unanimous in concluding that the PREP Act does not meet this high bar. In addition to the four Circuit courts to address the issue, dozens of district courts, including several in this Circuit, have concluded that the PREP Act is not a complete preemption statute. *See, e.g.*, *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 249 (E.D.N.Y. 2021), *vacated as moot*, No. 21-505, 2022 WL 3756009 (2d Cir. Aug. 1, 2022)[4]; *see also Maglioli*, 16 F.4th at 402 n.2 (citing cases). Only two district courts anywhere in the country appear to have reached the opposite conclusion. *See Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734, 743 (C.D. Cal. 2021), *abrogated by Saldana*, 27 F.4th at 687; *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 1:21-CV-00334, 2021 WL 5449053, at *2 n.3 (W.D. La. Apr. 30, 2021), *abrogated by Mitchell*, 28 F.4th at 586. It is

---

[4] "*Dupervil* . . . was vacated as moot because the plaintiff voluntarily dismissed the underlying state court action, and therefore may be considered by the Court as persuasive authority." *Palma v. Cabrini of Westchester*, No. 22-cv-5430 (VB), 2022 WL 4240823, at *3 (S.D.N.Y. Aug. 15, 2022) (citing *Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010)).

against this backdrop of persuasive authority that the Court considers whether the PREP Act completely preempts Mr. Pratt's claims.

To determine whether a federal statute completely preempts a state law claim, the Court must ask "whether the federal statute provides 'the exclusive cause of action' for the asserted state-law claim." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005). Here, Mr. Pratt's state law claims are based on JACC's allegedly negligent conduct. The PREP Act, meanwhile, defines a "narrow, specific cause of action for willful misconduct." *Maglioli*, 16 F.4th at 412. Contrary to JACC's arguments, this willful misconduct exception does not reveal a congressional intent to treat all claims within the scope of the PREP Act as arising under the laws of the United States. *See Saldana*, 27 F.4th at 688 ("The PREP Act neither shows the intent of Congress to displace the non-willful misconduct claims brought by the Saldanas related to the public health emergency, nor does it provide substitute causes of action for their claims.").

It is true that the elements of the federal cause of action need not "precisely duplicate" the state cause of action. *Maglioli*, 16 F.4th at 411 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004)). But as JACC acknowledges, the federal cause of action must "vindicate the same basic right or interest that would otherwise be vindicated under state law." Opp'n at 10 (quoting *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1207 (10th Cir. 2012)). When compared to Mr. Pratt's negligence claims, the PREP Act's cause of action for willful misconduct does not merely limit the scope of relief or impose slightly different standards for proving liability. As the Third Circuit pointed out, willful misconduct is "an entirely *different* cause of action" from negligence." *Maglioli*, 16 F.4th at 411. The basic interest in being protected from another's intentional wrongdoing is distinct from the interest in avoiding harm from unreasonable, but accidental, conduct.

11

The structure of the PREP Act's compensation fund confirms that the willful misconduct cause of action was not intended to completely preempt state law claims for negligence. Claims for compensation from the Fund are not limited to willful misconduct. Thus, the Act "confers primary jurisdiction over most claims within its scope not to the federal courts but to the Secretary, who has the sole authority to administer and provide compensation from" the Fund. *Dupervil*, 516 F. Supp. 3d at 251. This structure indicates that Congress did not intend to convert all state law claims related to COVID-19 into a cause of action that requires willful misconduct. It also undermines JACC's argument that the narrow federal cause of action was intended to exclude non-willful misconduct claims. *See Saldana*, 27 F.4th at 688 ("An administrative compensation fund, not an exclusive federal cause of action, provides the only redress for claims brought under the Act, other than those alleging "willful misconduct.").

Even claims that may be brought under the willful misconduct cause of action must first be exhausted through the Fund's administrative process. 42 U.S.C. § 247d-6e(d)(1). The Second Circuit has recognized that a complete preemption statute must create "original federal jurisdiction." *Sullivan*, 424 F.3d at 276. In *Sullivan*, just as in this case, the federal statute did not have completely preemptive force because it established primary jurisdiction in an administrative body rather than in the federal courts. *See id.* Thus, in light of the breadth of the compensation fund and its primary jurisdiction over claims within the scope of the PREP Act, JACC's argument that the willful misconduct provision creates "an exclusive federal cause of action for claimants seeking to recover against covered persons" must fail. *See* Opp'n at 4.

This conclusion is confirmed by the Second Circuit's analysis of the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), which similarly established an administrative compensation fund for injuries resulting from the September 11, 2001 attacks. *See*

*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005). Unlike the PREP Act, however, "the ATSSSA *also created* an alternative, *exclusive* federal cause of action for claims arising out of the plane hijackings and crashes." *Dupervil*, 516 F. Supp. 3d at 253 (internal quotation marks omitted). The ATSSSA provides a general "Federal cause of action for damages" and declares that this cause of action "shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes." *In re WTC Disaster Site*, 414 F.3d at 374 (quoting ATSSSA § 408). In concluding that the ATSSSA was a complete preemption statute, the Second Circuit emphasized that the exclusive federal cause of action encompassed an even broader set of claims than the administrative compensation fund. *See id.* at 375–76. But as courts in this circuit have noted, "[t]he PREP Act creates no similar exclusive federal cause or right of action." *Dupervil*, 516 F. Supp. 3d at 253.

Accordingly, the PREP Act does not completely preempt the state law causes of action asserted by Mr. Pratt, and the Court cannot exercise jurisdiction over his claims under that doctrine.[5]

### B.  The Substantial Federal Question Doctrine

As noted above, the Supreme Court has also recognized federal question jurisdiction when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13. Under this doctrine, the Court may exercise jurisdiction over a state law claim if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258

---

[5] Because the Court concludes that the complete preemption doctrine does not provide a basis for federal subject matter jurisdiction over state law negligence claims, the Court need not address whether Mr. Pratt's claims fall within the scope of the PREP Act.

(2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

Mr. Pratt does not address this potential basis for jurisdiction in his motion to remand.

JACC, meanwhile, argues that the substantial federal question doctrine applies, relying substantially on the Secretary's Fourth Amendment to the COVID-19 PREP Act Declaration, which states that there are "substantial federal legal and policy interests within the meaning of *Grable* . . . in having a uniform interpretation of the PREP Act." Opp'n at 21–22 (quoting 85 Fed. Reg. 79,190, 79,197 (Dec. 9, 2020)). JACC also argues that, because the only cause of action available to plaintiffs like Mr. Pratt is a federal claim for willful misconduct, federal law will necessarily control the standard of liability.

The Court disagrees.

JACC's argument falls short at the first prong of the test set forth in *Gunn* and *Grable*. PREP Act preemption is an affirmative defense that may be asserted against Mr. Pratt's state law claims, but it is not "necessarily raised" by such claims. For this reason, the four Circuit courts to consider the complete preemption issue discussed above also concluded that the substantial federal question doctrine does not apply. *See Maglioli*, 16 F.4th at 413 ("[A] PREP Act preemption defense is not 'necessarily raised' by a well-pleaded state-law negligence complaint, so [Defendants'] argument fails at *Grable*'s first step."); *Saldana*, 27 F.4th at 688; *Mitchell*, 28 F.4th at 589; *Martin*, 37 F.4th at 1214.

JACC's reliance on the Secretary's Declaration Amendment is unavailing. The Secretary does not explain how PREP Act preemption is "necessarily raised" by a state law negligence claim, and "an agency's opinion on federal court jurisdiction is not entitled to *Chevron* deference." *Saldana*, 27 F.4th at 687.

JACC is also incorrect that federal law controls the question of liability because Mr. Pratt should have brought his claim under the PREP Act's willful misconduct cause of action. Even if JACC is correct that Mr. Pratt should have asserted a PREP Act willful misconduct claim, a federal court may not, upon determining that state law claims are preempted, go on to decide federal claims "that have not actually been pleaded." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 309 (2d Cir. 2004). Thus, the standard of liability set by the PREP Act's willful misconduct provision is not "necessarily raised" by Mr. Pratt's claims either.

### C. JACC's Stay Request

JACC asks the Court to refrain from ruling on Mr. Pratt's motion to remand until the Second Circuit has decided two pending appeals that raise the PREP Act issues presented in this case. *See* Opp'n at 3 (citing *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*, No. 21-2164 (2d Cir.); and *Leroy v. Hume*, No. 21-2158 (2d Cir.)). JACC argues that the Court should stay its consideration of the motion because the Second Circuit is likely to resolve these issues definitively and because orders granting motions to remand are subject to only limited review. *See id.* at 3–4.

The Court disagrees.

As noted above, the Court must weigh (1) Mr. Pratt's interest in proceeding expeditiously; (2) the burden on JACC if the stay is not granted; (3) the interests of the courts; (4) the interests of others not party to the litigation; and (5) the public interest. *See Fried*, 2012 WL 252139, at *5. The Court will also look to the standard for a motion to stay pending an appeal in the instant case. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993). The *Hirschfeld* factors include—in addition to the interests of the plaintiff, the defendant, and the

public in general—whether there is "a substantial possibility, although less than a likelihood, of success" on appeal. *Id.* (internal quotation marks omitted).

Here, Mr. Pratt's interest in proceeding expeditiously is substantial. He filed his state law claim over six months ago, and the Second Circuit may not issue its decisions in *Rivera-Martinez* and *Leroy* for several months. If the Second Circuit agrees with the Third, Fifth, Seventh, and Ninth Circuits that the PREP Act does not confer federal question jurisdiction in cases such as this one, Mr. Pratt's case would be remanded, and he would begin again in state court. And even if the Court ordered that discovery proceed while the Second Circuit appeals are pending, some of the time and expense spent on discovery would likely be duplicated if the case was remanded.

On the other hand, JACC's interest in obtaining a stay is minimal, particularly in light of the near-unanimous body of federal court decisions holding that PREP Act preemption is not a basis for removal. And although an order remanding a case to state court generally is not reviewable on appeal, *see* 28 U.S.C. § 1447(d), JACC remains free to assert its ordinary preemption defense in state court, *see Sullivan*, 424 F.3d at 277–78 ("American is free to make this [preemption] argument in state court and, ultimately, to seek federal-court review by petitioning the Supreme Court for certiorari if American loses in the state courts."); *see also Franchise Tax Bd.*, 463 U.S. at 12 n. 12 ("[T]he absence of original jurisdiction does not mean that there is no federal forum in which a preemption defense may be heard.").

Finally, the interests of the courts and the public in judicial efficiency also favor denial of a stay. *See Kappel*, 914 F. Supp. at 1058–59 ("[A] court is obligated to exercise its jurisdiction over cases before it, and to guide those cases toward as speedy and inexpensive a conclusion as is consistent with permitting claims to be heard fairly."). Courts have issued stays "where a higher court is close to settling an issue of law bearing on the action." *LaSala v. Needham & Co.*,

399 F. Supp. 2d 421, 427 n.39 (S.D.N.Y. 2005). But that rationale carries little force in this case, where the overwhelming weight of authority supports a remand to state court.

Accordingly, the Court will deny JACC's request for a stay.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Pratt's motion to remand is **GRANTED**, JACC's request for a stay is **DENIED**, and JACC's motion to dismiss is **DENIED as moot**.

The Clerk of Court respectfully is requested to remand this case to the Superior Court of Connecticut, Judicial District of New London, and to close it here.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of November, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE